UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------

| | | |
|---|---|---|
| HOLLY L. STAUNCH, | : | CASE NO. 1:06-CV-1011 |
| Plaintiff, | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Docs. No. 6, 21, 34, 39] |
| CONTINENTAL AIRLINES, INC., | : | |
| Defendant. | : | |

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this Opinion and Order, the Court considers three motions that allege and deny violations of three federal and state laws. These motions center on whether a flight attendant has alleged a valid pregnancy discrimination claims against her former employer.

In the underlying lawsuit, Plaintiff Holly L. Staunch ("Staunch") sues Defendant Continental Airlines, Inc. ("Continental") for "interference" and "retaliation" under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, pregnancy discrimination in violation of Section 4112.02(A) of the Ohio Revised Code, and violation of Ohio's public policy against pregnancy discrimination. [Docs. 1, 17.] Continental denies Staunch's allegations and raises affirmative defenses. [Docs. 5, 18.]

In addition to answering Staunch's complaint, Continental moves to dismiss Staunch's entire lawsuit as preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, and, alternatively, her FMLA claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Doc. 21; Staunch opposes this motion, Doc. 29. Staunch moves for partial summary judgment on her Ohio

-1-

Case No. 1:06-CV-1011
Gwin, J.

pregnancy discrimination claim, Doc. 39; Continental opposes this motion, Doc. 44. Continental moves for summary judgment on Staunch's entire law suit, repeating the legal theories presented in its motion to dismiss and adding new arguments against Staunch's state law claims, Doc. 34; Staunch opposes this motion, Doc. 46.

For the reasons presented below, the Court **DENIES** Continental's amended motion to dismiss, **DENIES** Staunch's motion for partial summary judgment, **GRANTS** Continental's motion for summary judgment, and **DISMISSES** Staunch's claims against Continental. Further, as a result of this Opinion and Order, Continental's original motion to dismiss is **MOOT**.

I. Background

Continental hired Staunch as a flight attendant in early 1998. [Docs. 1, 6, 9, 17, 21.] In January 2002, Staunch became pregnant and requested FMLA leave from Continental, which Defendant granted. [Docs. 1, 5, 6, 17, 18, 21, 29, 41.] In April 2002, during the course of her FMLA leave period in April 2002, Staunch called-in sick to work on at least four occasions after Continental had assigned her in-flight duties. [Doc. 6, at Exh. A.] The record does not reflect the date of expiry of Staunch's FMLA leave period.

Following her spate of absenteeism in April 2002, Staunch appears to have good attendance until May 2003. On May 6 and 8, 2003, Staunch recorded "Sick Call After Assignment" incidents. *See, e.g.*, Doc. 6, at Exh. A. On May 7, 10, 11, and 12, 2003, Staunch recorded "Sick" incidents. *Id.* Based on these May 2003 absences, Staunch's In-Flight Supervisor, Kimberly Piszczek, issued Staunch a "Termination Warning." *See, e.g.*, Doc. 41, at Exh. F. In September 2003, Continental met with Staunch to discuss her May 2003 absences and other job performance issues. *Id.* On September 21, 2003, Continental sent Staunch a "Termination Warning" letter that read, in part:

-2-

Case No. 1:06-CV-1011
Gwin, J.

> A review of your 12-month active work history indicate[s] the following instances of unacceptable attendance.
>
> > Sick September 28 - October 7, 2001 (Issued Informal Conversation)
> > Sick call after Assignment Dec. 6, 2001
> > Sick Dec. 28, 2001 - Jan. 2, 2002 (Issued Written Warning)
> > Sick Feb. 24, 2002 / Sick Call After Assignment Feb. 25, 2002
> > Short Notice Sick March 28, 2002
> > Sick call after Assignment April 10, 11, 12, 2002
> > Sick Call After Assignment April 27, 2002
> > Sick Call After Assignment May 6, 2003
> > Sick May 7, 2003
> > Sick Call After Assignment May 8, 2003
> > Sick May 10-12, 2003
>
> . . .
>
> As a result of these facts and in light of your work history, which have been considered in arriving at a decision in this matter, you are placed on Termination Warning effective September 18, 2003 for 18 months of active service.
>
> . . . when a Flight attendant reaches Termination Warning the Flight Attendant will be on a single track for discipline purposes. Any infraction in Job Performance or Dependability may lead to termination of employment.

[Doc. 41, at Exh. F.]

On December 28 and 29, 2003, Staunch violated her "Termination Warning" by recording two "Sick" incidents. [Doc. 6, at Exh. A.] Although Staunch's December 2003 absences could have subjected her to termination, Continental chose to "informally counsel" her rather than end her employment. *Id.* However, on April 22, 2004, Supervisor Piszczek discovered that Staunch failed to include "Revision 23," a December 10, 2003 Federal Aviation Regulation ("FAR") safety and operations update, in her In-Flight Manual. *Id.* Piszczek spoke with Staunch and, ultimately, allowed her to fly on that day. *Id.*

On April 29, 2004, Supervisor Piszczek and union representatives met with Staunch to inform her that Continental had decided to terminate her employment on the basis of her job

Case No. 1:06-CV-1011
Gwin, J.

performance and dependability violations. [Doc. 6, at Exh. A.] Following the meeting, Supervisor Piszczek sent Staunch a termination letter that stated, in pertinent part:

> Thank you for meeting with me on April 29, 2004 to discuss a Job Performance related issue. . . . A review of your 12-month active work history indicates the following:
>
> > Sick Call After assignment April 10, 11, 12, 2002
> > Sick Call After Assignment April 27, 2002
> > Sick Call After Assignment May 6, 2003
> > Sick May 7, 2003
> > Sick Call After Assignment May 8, 2003
> > Sick May 10-12, 2003 (Issued Termination Warning)
> > Sick December 28-29, 2003 (Informal Conversation)
> > Infraction of FAR 121.137 Missing Revision 23 dated December 10, 2003
>
> Since the issue of termination warning you have incurred a sick instance and a job performance instance.
>
> At your check in on April 22, 2002, it was determined by me that you did not have revision 23 in your manual. Nor was your signature on the Revision Summary Record. You admitted during our meeting you were not sure if Revision 23 was in your manual. Your work schedule shows you have flown 5 months in non-compliance. I explained to you that either one of the above single issues could have led to termination of your employment.
>
> As a result of the facts listed above and in light of your work history, which have been considered in arriving at a decision in this matter your employment with Continental Airlines is terminated effective April 29, 2004 . . .

[Doc. 6, at Exh. A.]

Staunch grieved her termination through Continental's arbitration procedure and, thereafter, filed the actions underlying the instant motions in this Court. In her lawsuit, Staunch says that Continental impermissibly included her April 2002 FMLA leave as factors in its April 29, 2004 decision to terminate her employment and, in doing so, violates her federal and state protections against pregnancy discrimination. [Docs. 1, 17.]

-4-

Case No. 1:06-CV-1011
Gwin, J.

Continental denies Staunch's allegations and asserts that its September 2003 decision to place her on "Termination Warning" resulted from Staunch's May 2003 work absences. [Docs. 5, 18.] Continental also says that its April 29, 2004 decision to terminate Staunch's employment resulted from her post-"Termination Warning" incidents, i.e., her work absences in December 2003 and failure to include "Revision 23" in her In-Flight Manual. *Id.*

In its amended answer, amended motion to dismiss, and motion for summary judgment, Continental offers substantial documentary and testimonial evidence to establish that Staunch's April 2002 FMLA leave did not precipitate her April 29, 2004 firing. *See, e.g.*, Docs. 18, 21, 31, 43, 44, 47. Staunch offers similar, albeit less fulsome and consistent, evidence in her pleadings and responsive motions. *See, e.g.*, Docs. 17, 29, 39, 40, 41, 42, 46, 49.

The Court considers, in turn, each of Continental's amended motion to dismiss, Staunch's motion for partial summary judgment, and Continental's motion for summary judgment.

## II.  Legal Standard

A court may grant a motion to dismiss only when "it appears beyond doubt" that the plaintiff fails to state any claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45 (1957). In deciding a motion to dismiss under Rule 12(b)(6), a court accepts as true all factual allegations in the complaint and construes any well-pleaded factual allegations in the plaintiff's favor. *See, e.g.*, *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). In assessing the plaintiff's allegations, a court need not accept as true "bare assertion[s] of legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). A court may find a motion to dismiss "premature" when a defendant files it before the initial conference of parties or close of preliminary discovery. *See, e.g.*, *Omnicare, Inc. v. Provider Servs., Inc.*, 2006

Case No. 1:06-CV-1011
Gwin, J.

U.S. Dist. LEXIS 6497 (N.D. Ohio Feb. 21, 2006).

A court appropriately grants summary judgment where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party satisfies its burden, the non-moving party must set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It is not sufficient for the non-moving party merely to show that there is some existence of doubt as to the material facts. *Id.*

In deciding a motion for summary judgment, a court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). Ultimately, a court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III. Analysis

The Court examines Continental's amended motion to dismiss, Staunch's motion for partial summary judgment, and Continental's motion for summary judgment.

*A. Continental's Amended Motion to Dismiss*

Case No. 1:06-CV-1011
Gwin, J.

*1. The RLA Does Not Preempt Staunch's "Entire Lawsuit"*

To promote stability in labor-management relations, Congress passed the RLA, which establishes a mandatory arbitral regime for "minor" disputes. 45 U.S.C. § 184; *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). "Minor disputes" involve controversies over the interpretation of an existing collective bargaining agreement in a particular fact situation and pertain only to disputes invoking these contract-based rights. *Hawaiian Airlines*, 512 U.S. at 252-54. A court may resolve labor questions arising under federal or state statutory law if the underlying factual issues do not require the court to construe an existing collective bargaining agreement. *See, e.g.*, *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988).

Continental advances the unsupported contention that the conflict over Staunch's firing is a "minor dispute" that must be resolved only through the RLA mechanisms, including Defendant's internal dispute-resolution processes and adjustment board. As such, Continental says that the RLA preempts Staunch's federal and state law claims because the collective bargaining agreement sets forth standards and procedures for determining whether to fire a flight attendant on the basis of her attendance record and safety violations. Continental further argues that Staunch's claims depend wholly on the Court's interpretation of the collective bargaining agreement, which the RLA preempts the Court from undertaking. Although it makes this argument, Continental fails to identify any relevant and specific collectively bargained provision directly at-issue in this case. And, apart from their interpretation of whether Continental had "just cause" for Staunch's discharge, Defendant's adjustment board never interpreted any collective bargaining provision in the context of Staunch's federal and state law claims.

The Court disagrees with Continental's founded characterization of Staunch's complaint as

-7-

Case No. 1:06-CV-1011
Gwin, J.

a "minor dispute" under the RLA. Staunch's FMLA claim arises under a federal law that exists independent of Continental's collective bargaining agreement. By asserting an FMLA claim in her amended complaint, Staunch seeks to enforce a federal statutory right, not a contractual right embodied in the collective bargaining agreement. The Court can resolve Staunch's claim through a federal statute and without any reference to the collective bargaining agreement. Consequently, the RLA does not preempt Staunch's FMLA claim in this Court. Because Staunch's employment discrimination claim arises under federal law, not the collective bargaining agreement, the RLA does not preempt the claim.

Nor does the RLA preempt Staunch's state law claims. The Supreme Court has specifically rejected the contention that the RLA broadly preempts state-law claims based on discharge or discipline. *See, e.g.*, *Hawaiian Airlines*, 512 U.S. at 257. To prevail on its contention that the RLA broadly preempts Staunch's state law claims based on discharge or discipline, Continental needs to demonstrate that Plaintiff's "firmly rooted" her claims in a breach of the collective bargaining agreement itself. *Id.* (citation omitted). Continental does not make such an argument. Instead, the carrier argues that the RLA completely preempts state law where Staunch's claim "is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and the RLA." *Beard v. Carrollton R.R.*, 893 F.2d 117, 121 (6th Cir. 1989).

Continental fails to recognize that the Sixth Circuit rejects *Beard*'s "complete preemption" argument except "in those situations where Congress has indicated an intent to occupy the field so completely that any ostensibly state claim is in fact a federal claim for purposes of arising-under jurisdiction." *See Roddy v. Grand Trunk W. R.R.*, 395 F.3d 318, 324 (6th Cir. 2005)(quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir. 2004). Nor has Congress indicated its intent to

Case No. 1:06-CV-1011
Gwin, J.

"occupy the field" of anti-discrimination protections arising under Ohio law. Staunch brings her pregnancy discrimination and wrongful termination claims under valid Ohio statutes and common laws, not the collective bargaining agreement. Consequently, the RLA does not "completely preempt" Staunch's state law claims.

### *2. Continental's Rule 12(b)(6) Argument is Unavailing*

The FMLA's central provision guarantees "eligible employees" twelve weeks of unpaid leave during a one-year period following certain events, including childbirth. 29 U.S.C. § 2612(a)(1). *See also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002). The statute defines "eligible employee" as "an employee who has been employed . . . for at least 12 months by the employer with respect to whom leave is requested . . . and . . . for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A)(i), (ii). The statute makes it unlawful for an employer to interfere with, restrain, or deny the exercise of these rights, 29 U.S.C. § 2615(a)(1), and subjects violators to consequential damages and appropriate equitable relief, 29 U.S.C. § 2617(a)(1).

In her amended complaint, Staunch alleges claims for interference with her FMLA rights and Continental's retaliation against her in violation of the FMLA. To prevail in its motion to dismiss Staunch's "interference" and "retaliation" claims, Continental must establish that it "appears beyond a reasonable doubt that [Staunch] fails to state any claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). *See also Conley*, 355 U.S. at 45. Continental does not do so with its amended motion to dismiss.

Staunch pleads her status as a former employee of Continental who sought and received FMLA intermittent leave. The parties do not contest that, sometime in January 2002, Staunch

Case No. 1:06-CV-1011
Gwin, J.

became pregnant and informed Continental of her new medical needs. Likewise, the parties agree that Continental terminated Staunch on April 29, 2004 based, in part, on her absenteeism. In deciding Continental's instant motion to dismiss, the Court accepts as true all factual allegations in Staunch's amended complaint and construes any well-pleaded factual allegations in her favor. *See Miller*, 50 F.3d at 377. Although Continental disputes Staunch's status as an "eligible employee" and her eventual ability to prove a causal connection between her FMLA leave and Continental's termination of her employment, the Court need not accept as true Defendant's "bare assertion[s] of legal conclusions." *See Columbia Natural Res., Inc.*, 58 F.3d at 1109. This is particularly the case where, as here, Defendant filed its motion to dismiss before the parties' initial management conference or the close of preliminary discovery. *See Omnicare*, 2006 U.S. Dist. LEXIS 6497.

Thus, the Court denies Continental's motion to dismiss Staunch's "entire law suit" and, alternatively, her FMLA allegation for failing to state a claim upon which the Court can grant relief.

*B. Plaintiff's Motion for Partial Summary Judgment on Her State Law Discrimination Claim*

In cases of pregnancy discrimination alleged under Section 4112, Ohio courts apply the same burden-shifting approach used by federal courts. To establish such a claim, a plaintiff must demonstrate that she: (i) belonged to a protected class; (ii) suffered an adverse employment action; (iii) qualified for the position; and, (iv) was replaced by a person outside the protected class. *See EEOC v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 834 n.1 (6th Cir. 1997). *See also Tysinger v. Police Dep't of the City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006).

Once a plaintiff establishes a *prima facie* case for pregnancy discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Yenkin-Majestic Paint Corp.*, at 834. If the defendant sets forth a

-10-

Case No. 1:06-CV-1011
Gwin, J.

legitimate, non-discriminatory reason for the adverse employment action, the burden of production shifts back to the plaintiff to demonstrate that the reason was merely a pretext for discrimination. *Id.* Notwithstanding this burden shifting exercise, the plaintiff still shoulders the ultimate burden of proving her case. *Id.*

The plaintiff may show pretext either directly by persuading the factfinder that a discriminatory reason more likely motivated the employer, or indirectly by discrediting the employer's proffered explanation. *Id.* (internal quotation and citation omitted). To challenge the credibility of an employer's explanation, the plaintiff must demonstrate, by a preponderance of the evidence, that the proffered reason: (i) had no basis in fact; (ii) did not actually motivate the adverse employment action; or (iii) insufficiently motivated the adverse employment action. *Id.* (citation omitted).

Although Staunch meets the first three elements of a *prima facie* claim of pregnancy discrimination, she fails to establish the fourth element. The parties do not contest that, in early 2002, Staunch belonged to a FMLA-protected class, i.e., women seeking leave for pregnancy-related reasons. Also, Staunch had worked as a qualified flight attendant with Continental since 1998. Further, on April 29, 2004, Staunch suffered the adverse employment action of termination. Thus, Staunch meets the first three elements of *prima facie* pregnancy discrimination.

However, Staunch offers no evidence that Continental replaced her with "a person outside the protected class." *Yenkin-Majestic Paint Corp.*, 112 F.3d at 834 n.1. Instead, Continental says that it treated Staunch equally or even more leniently than other flight attendants during her "Termination Warning." Staunch does not dispute Continental's claim. Without offering any evidence that Continental replaced her with similarly-situated, non-pregnant flight attendants or

-11-

Case No. 1:06-CV-1011
Gwin, J.

other evidence that Continental retaliated for her exercise of pregnancy leave two years before Staunch cannot state a *prima facie* case of pregnancy discrimination.

Even if Staunch could have established a *prima facie* case of discrimination, she does not convincingly show that her pregnancy-related leave in early 2002 provided the pretext for her employment termination on April 29, 2004. At the outset, the two events are temporally remote. *See, e.g.*, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close"). *See also Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (finding that, absent additional evidence, two to five months between alleged discrimination and adverse employment outcome does not justify the creation of a triable issue of causation); *Cooper v. N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986) (noting that four months is insufficient to support an inference of retaliation). Here, more than twenty-four months elapsed from the period of Staunch's protected FMLA leave in April 2002 and her April 29, 2004 firing. Thus, Staunch fails to show the causal connection between her termination and her FMLA-protected activities.

Moreover, other facts negate any inference that could arise from the temporal proximity between Staunch's FMLA leave and her termination. In May 2003, Staunch recorded two "Sick Call After Assignment" incidents and four "Sick" incidents. Following this spate of absenteeism, Supervisor Piszczek issued to Staunch a "Termination Warning" that noted "[a]ny infraction in Job Performance or Dependability may lead to termination of employment." Nevertheless, Staunch recorded two "Sick" incidents in December 2003. Still, Continental did not fire her; instead, it chose

Case No. 1:06-CV-1011
Gwin, J.

to "informally counsel" Staunch in January 2004. Finally, after discovering that Staunch had flown for months with a noncompliant In-Flight Manual, Continental decided to fire her. This series of events does not evidence Continental's intent to fire Staunch in retaliation for her taking FMLA leave in April 2002.

Finally, Continental offers legitimate, nondiscriminatory reasons for Staunch's termination, i.e., deficient job performance and dependability violations, that Staunch does not show are pretextual. Staunch appended to her motion for partial summary judgment much of the same information relied upon by Continental, but she failed to refute it in any way. The Court finds the fact that both sides relied on the same evidence as an indicator of its validity. As a result, the Court accepts Continental's reasons for firing Staunch as factual, credible, and sufficient to motivate its decision to fire her.

Thus, the Court concludes that Staunch does not show her entitlement to a judgment establishing a *prima facie* case of pregnancy discrimination. Nor does Staunch show that her FMLA leave motivated Continental to fire her. Consequently, Staunch's motion for partial summary judgment fails.

*C. Defendant's Motion for Summary Judgment on Plaintiff's "Entire Case"*

*1. The RLA Does Not Preempt Staunch's Federal and State Law Claims*

In its motion for summary judgment, Continental repeats the primary assertion of its amended motion to dismiss: namely, that the RLA preempts the Court from considering Staunch's federal and state law claims. For the reasons presented above, Continental's "preemption" assertion against Staunch's "entire case" fails. However, as discussed below, Continental prevails in its motion for summary judgment because it successfully challenges the specific legal basis of each of

-13-

Case No. 1:06-CV-1011
Gwin, J.

Staunch's allegations against it.

### *2. Staunch's FMLA Claims Fail as a Matter of Law*

Setting aside the parties' disagreement over whether Staunch qualified as an "eligible employee," the Court finds that Plaintiff's "interference" and "retaliation" claims have no basis in law.  Contrary to the statute's requirements, *see* 29 U.S.C. § 2615(a)(1), Staunch offers no evidence that Continental interfered with, restrained, or denied her exercise of her FMLA rights during her pregnancy-related leave.

Further, in her response to Continental's motion for summary judgment, Staunch offers no new evidence to refute Defendant's assertion that her pregnancy-related absences from work in early 2002 contributed to Continental's April 29, 2004 termination of her employment.  As discussed above, the events are too temporally remote to establish any relationship between her termination and her exercise of her FMLA rights.  In addition, Staunch's continued excessive absenteeism and dependability violations supercede any pretextual connection between Staunch's FMLA leave and her termination.

Finally, Staunch does not refute Continental's assertion that her failure to include the December 10, 2003 Revision 23 in her in-flight manual triggered Defendant's decision to fire her. Based on these considerations, Staunch does not establish a *prima facie* case of "interference" or "retaliation" and her claims fail as a matter of law.

### *3. Staunch's Pregnancy Discrimination Claim Fails as a Matter of Law*

Continental successfully challenges Staunch's pregnancy discrimination claim under Section 4112.02 of the Ohio Revised Code.  As discussed above, Staunch does not establish a *prima facie* case of pregnancy discrimination.  Viewing all evidence and drawing all reasonable inferences in

-14-

Case No. 1:06-CV-1011
Gwin, J.

favor of Continental, the non-moving party, *National Enterprises, Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997), Staunch does not establish the requisite connection between her FMLA leave in 2002 and her April 29, 2004 termination. *Yenkin-Majestic Paint Corp.*, 112 F.3d at 834 n.1. As a result, the Court finds Continental entitled to summary judgment as a matter of law on Staunch's claim of pregnancy discrimination under Section 4112.02(A) of the Ohio Revised Code.

*4. Staunch's Public Policy Claim Fails as a Matter of Law*

Finally, Staunch cannot maintain an Ohio "public policy" claim. Staunch asks the Court to find that Continental violated Ohio's public policy against pregnancy discrimination. Staunch bases her request on Continental's alleged violation of federal and state statutory law.

To establish a public policy wrongful termination claim, Staunch must show:

> 1. [t]hat a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element), and 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Collins v. Rizkana*, 73 Ohio St. 3d 65, 69-70, 652 N.E. 2d 653 (1995).

A plaintiff may not make public policy wrongful termination claim if the underlying statute already contains a sufficient remedy for the firing. *Easer v. Curtis Indus., Inc*., 774 F. Supp. 1076 (N.D. Ohio 1991); *Pozzobon v. Parts for Plastics, Inc*., 770 F. Supp. 376 (N.D. Ohio 1991); *Provens v. Stark County Bd. of Mental Retardation and Developmental Disabilities*, 64 Ohio St. 3d 252, 594 N.E. 2d 959 (1992). Further, Ohio courts have held that "[a] claim for wrongful discharge in violation of public policy embodied in [a] statute prohibiting discriminatory practices will fail if the underlying discrimination claim fails." *Desanzo v. Titanium Metals Corp.*, 351 F. Supp.2d 769,

-15-

Case No. 1:06-CV-1011
Gwin, J.

782-83 (S.D. Ohio 2005) (citations omitted).

The FMLA provides significant remedies, including back pay[1], front pay[2], compensation for benefits lost[3], liquidated damages[4], costs and attorney fees.[5] Likewise, Section 4112.99 of the Ohio Revised Code provides that "[w]hoever violates this chapter is subject to a civil action for damages, injunctive relief, and any other appropriate relief." OHIO REV. CODE ANN. § 4112.99. Given the availability of these statutory remedies, Staunch may not avail herself of Ohio's public policy claim for pregnancy discrimination under the common law.

Even if she could plead such a claim, Staunch shows insufficient evidence to make out a public policy claim. Staunch must show her exercise of her FMLA rights motivated Continental to fire her. As discussed above, Staunch fails to show this causal connection. Most tellingly, Continental fired Staunch two years after her FMLA leave. Further, Continental held-off firing her until April 29, 2004, although it had grounds to terminate her employment in December 2003. Additionally, Staunch fails to show circumstantial evidence sufficient to support a finding that Continental fired her in retaliation for her use of FMLA. Staunch does not offer evidence that Continental fired similarly-situated employees who did not seek or use FMLA leave. Staunch produces evidence that Continental did not terminate some employees who had failed to update their In-Flight Manuals; but, she offers no evidence that Continental maintained the employment of other

---

[1] 29 U.S.C. § 2617(a)(1)(A)(i)(I).

[2] 29 U.S.C. § 2617(a)(1)(B).

[3] 29 U.S.C. § 2617(a)(1)(A)(i)(II).

[4] 29 U.S.C. § 2617(a)(1)(A)(iii).

[5] 29 U.S.C. § 2617(a)(3).

Case No. 1:06-CV-1011
Gwin, J.

flight attendants on "Termination Warning" who, like her, failed to update their In-Flight Manuals. In short, the "comparators" highlighted in Staunch's pleadings do not share situations similar to hers.

Thus, allowing Staunch's "public policy" claim does not vindicate the goals of either the FMLA or the Ohio Revised Code. Also, Staunch does not give sufficient evidence that her use of FMLA leave motivated Continental to fire her. Therefore, the Court finds Continental entitled to summary judgment on Staunch's claim for wrongful termination under Ohio's common law.

## IV. Conclusion

For these reasons, the Court **DENIES** Continental's amended motion to dismiss, **DENIES** Staunch's motion for partial summary judgment, **GRANTS** Continental's motion for summary judgment, and **DISMISSES** Staunch's claims against Continental. Further, as a result of this Opinion and Order, Continental's original motion to dismiss is **MOOT**.

IT IS SO ORDERED.


Dated: January 26, 2007                         s/        *James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE